ZINTER, Justice
(concurring).
[¶ 25.] I join the opinion of Justice Meierhenry. Although I agree with many of the legal principles discussed in the dissent, I join the majority writing because it appears that the Agreements the employees sought to enforce as third-party beneficiaries were not terminated before Regional provided the medical services at issue.
[¶ 26.] The dissent agrees that Regional “was limited to accepting ‘payment as provided in this Agreement as payment in full’ for covered services.” See infra ¶ 32 (quoting agreement). Indeed, both Agreements explicitly provided that the employee members were “[e]xcept as otherwise permitted under applicable law ... not liable for any charges for Healthcare Services that are Covered Services.” See supra ¶ 17 (quoting § 2.11 of the Payer Agreement and § 5.05 of the Hospital Agreement) (emphasis added). The dissent, however, concludes that because Pope & Talbot “defaulted” on its payments, Regional’s limitation on billing employees was discharged by Pope & Talbot’s “breach.” See infra ¶¶ 32, 33-35, 37. Similarly, the circuit court ruled that Regional was not prohibited from billing employees after their “eligibility for services ceased,” which the circuit court determined occurred when Pope & Talbot filed for bankruptcy in November 2007. Thus, the dissent and the circuit court reason that upon breach (the dissent) or bankruptcy (the circuit court), the agreements automatically terminated thereby eliminating employees’ ability to enforce the contracts. Both opinions further assume that the medical services at issue were provided after termination of the Agreements. In my view, the record does not support either assumption.
[¶ 27.] With respect to termination, Justice Meierhenry points out that there is no evidence that FMC or Regional terminated either Agreement in the bankruptcy or otherwise. Supra ¶ 15. This observation is well supported because the Agreements did not automatically terminate upon breach or bankruptcy. § 6.03 of Regional’s contract only gave Regional the conditional right to terminate for a material breach if not corrected within thirty days of written notice of such breach. The record does not, however, reflect that Regional ever terminated the contract in accordance with the written notice and grace period requirements. Moreover, the record does not indicate that the contracts were terminated in the November 2007 bankruptcy because some medical services were paid for under the plan through April 2008. Thus, the record does not support the assumption that the Agreements were terminated before Pope & Talbot was sold in May of 2008.
[¶ 28.] This is significant because even though Regional knew Pope & Talbot was not paying, and even though Regional knew it could terminate the Agreements *927 thirty days after a breach, Regional continued to provide medical services without terminating the Agreements. Thus, a substantial number of the medical services were provided before the November 2007 bankruptcy (some as early as September 7, 2006) and some were provided as late as May 2008. And although there is no dispute that Pope & Talbot was sold in May 2008, the record does not reflect that any services were provided after May 30, 2008. Finally, even if there had been a termination of the Agreements, § 6.04 required Regional to provide services for the period necessary to conclude any hospitalizations existing on the date of termination or until the patient could be safely and reasonably referred.
[¶ 29.] Because the contracts did not automatically terminate, and because Regional continued to provide the medical services at issue without terminating the contracts, the contracts restricting Regional’s right to seek payment from the employees remained in effect for the medical services involved in this case. And until the Agreements were terminated, the employees were entitled the benefit of the Agreements as third-party beneficiaries. I therefore join the opinion of the Court.